UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIE DUNCAN,

        Plaintiff,

v.

QUALITY STEEL PRODUCTS, INC.,

        Defendant.

_____/

Case No. 06-11590

Honorable Nancy G. Edmunds

## ORDER (1) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [19], AND (2) DENYING AS MOOT PLAINTIFF'S MOTION TO STRIKE [23]

Pending before this Court is Defendant Quality Steel Products, Inc.'s motion for summary judgment, filed on April 9, 2007, and Plaintiff Julie Duncan's motion to strike, filed on April 30, 2007.  Plaintiff Julie Duncan is afflicted with Crohn's disease, a disease that impacted her ability to perform her job with Defendant.  She alleges that Defendant's conduct towards her during her employment, and the eventual termination, violated federal and Michigan state law. Plaintiff brings four claims: (1) unlawful interference and retaliation under the Family and Medical Leave Act (the "FMLA"), 29 U.S.C. § 2601, *et seq.*; (2) unlawful failure to accommodate, discrimination, and retaliation under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12117, *et seq.*; (3) unlawful retaliation under the Michigan Worker's Disability Compensation Act of 1969 (the "WDCA"), Mich. Comp. Laws § 418.101, *et seq.*; and (4) violation of the

Michigan Persons with Disabilities Civil Rights Act (the "PWDCRA"), Mich. Comp. Laws § 37.1201, *et seq.*

Plaintiff claims that she has established prima facie cases under all four statutes and that there are a number of genuine issues of material fact that preclude entry of summary judgment. Plaintiff's motion to strike seeks to exclude several of Defendant's exhibits from consideration. For the reasons set forth below, the Court DENIES Defendant's motion for summary judgment, and DENIES AS MOOT Plaintiff's motion to strike.

## I. FACTS

On August 12, 2003, Defendant hired Plaintiff into the position of material handler. (Def.'s Mot. for Summ. J. (hereinafter, "Def.'s Mot.") at 11; Pl.'s Resp. at 15.) The position is vital to Defendant's business because the material handler deals with all the inventory information; thus, consistent attendance is an important aspect for such employees. (Def.'s Mot. at 11.) From her date of hire to November 24, 2003, Plaintiff "seemed to be doing well," and on November 24, 2003, she received a pay raise from $12 per hour to $12.75 per hour (*Id.* at 11.)

It is undisputed that Plaintiff suffers from Crohn's disease, which is an inflammatory bowel disease that causes inflammation in the small intestine. (Pl.'s Resp. at 16.) This inflammation results in abdominal pain, rectal bleeding, and diarrhea. Treatment options include drugs, nutritional supplements, surgery, or a combination of the three. Although treatment can help control the disease, there is no cure. (Pl.'s Resp., Ex. 6 at 2-3.)

From August 2003 through the end of February 2004, Plaintiff was minimally

2

symptomatic and she was absent one day in January and February 2004. (Pl.'s Resp. at 16; Def.'s Mot. at 12.) On March 3, 2004, Plaintiff was hospitalized for a flare-up of Crohn's disease and missed work until April 9, 2004. (Pl.'s Resp. at 16; Def.'s Mot. at 12.) Plaintiff called her immediate supervisor, John Frost, during her hospitalization and, upon her return to work, notified Frost and John Dolan, the plant manager, that she was suffering from Crohn's disease. (Pl.'s Resp. at 16.)

From April 2004 through October 2004, Plaintiff states she worked without incident, but Defendant notes that Plaintiff used six additional absences during this time period. (Pl.'s Resp. at 17; Def.'s Mot. at 12.) Still, Plaintiff received a merit raise in November 2004. (Pl.'s Resp. at 17.) On November 9, 2004, Plaintiff was hospitalized due to a flare-up of Crohn's and continued to be hospitalized on and off until December 3, 2004. (Pl.'s Resp. at 17; Def.'s Mot. at 12.) Throughout December, Plaintiff had another hospitalization and a single absence due to Crohn's, and Defendant states she missed nine days of work due to illness during that month. (Pl.'s Resp. at 17; Def.'s Mot. at 12.)

When Plaintiff returned to work as a material handler in December 2004, she claims that Frost and Dolan harassed her because she had required a medical leave and blamed her for errors made during the absence. (Pl.'s Resp. at 17.) Plaintiff states Defendant used aggressive, assaulting behavior, made her cry, and told her Defendant was going to fire her because of these absences. (Pl.'s Resp. at 17, Ex. 11.) Plaintiff posits that this harassment triggered another flare-up of Crohn's, which led to hospitalization on February 4, 2005.

During the same time period, December 2004 through February 2005, Plaintiff expressed concern about her abilities to perform the material handler job, feeling that the demands of the position were more than she was capable of performing. (Def.'s Mot. at 12-13.) Plaintiff and Dolan then had a meeting to discuss Plaintiff's job performance and the importance of data entry on a regular basis. (Def.'s Mot. at 13.) A second meeting took place where Dolan discussed Plaintiff's performance with her. (*Id.*) Dolan requested Plaintiff to schedule medical appointments either early in the day or late in the day to limit the amount of time she was away from her position, but Plaintiff indicated she could not do so. (*Id.*) In January 2005, Plaintiff missed two days of work, and then in February 2005, Plaintiff informed Frost that she was going to be out for the week due to hospitalization. She subsequently missed sixteen days of work. (*Id.*) Defendant attempted to get in touch with Plaintiff by calling her home and boyfriend, but could not get an update. (*Id.*) Defendant decided to terminate Plaintiff on February 16, 2005. (*Id.*)

Plaintiff returned to work on February 17, 2005 to inform Defendant that she had been released from the hospital and could return to work on February 28, 2005. (Pl.'s Resp. at 18; Def.'s Mot. at 13.) Defendant immediately called Plaintiff into a meeting with vice president Colin Chubb, Dolan and Frost, where Chubb terminated Plaintiff for excessive absenteeism and noted the termination on her time record. (Pl.'s Resp. at 18, Ex. 14; Def.'s Mot. at 14.) When Plaintiff provided proof of her hospitalization dates, Chubb retracted the termination but demoted Plaintiff to a labor classification, reduced her hourly pay rate to $9 per hour, and reassigned her to a production line position. (Pl.'s Resp. at 18.) At the meeting, Chubb told Plaintiff that if she did not like the

decision, she could quit. (*Id.*) Plaintiff returned to work on February 28, 2005 and provided a medical clearance form and a note from her physician confirming her Crohn's disease and requesting that she have frequent bathroom breaks. (Pl.'s Resp. at 18-19, Ex. 16; Def.'s Mot. at 14, Ex. 2.) When Plaintiff returned to work, Defendant enacted Plaintiff's reduction in pay and demotion to a production line position where she could not leave easily for bathroom breaks. (Pl.'s Resp. at 19.) Plaintiff states that, despite written and verbal notification of her need for frequent bathroom breaks, Defendant failed to provide the accommodation. (*Id.*) Defendant counters that it granted the accommodation, but simply requested that Plaintiff inform a supervisor whenever she needed a bathroom break so that she would not shut down the press, because shutting the press down could result in equipment damage. (Def.'s Mot. at 14.) Plaintiff contends that at one point Defendant failed to provide her with the necessary relief, so Plaintiff walked away from the production line to use the restroom. (Pl.'s Resp. at 19.) Frost reprimanded Plaintiff for doing this and Plaintiff claims that her continued requests for bathroom breaks were ignored, resulting in Plaintiff soiling herself and her clothing. (*Id.*, Ex. 17.) Plaintiff also asserts that Chubb and Dolan quit talking with her and they, along with Defendant's owner, William Purdy, were unapproachable. (Pl.'s Resp. at 19.)

On March 4, 2005, Plaintiff filed a worker's compensation claim relating to her Crohn's flare-ups and the February 2005 hospitalization. (Pl.'s Resp. at 19.) Defendant submitted the Employer's Basic Report of Injury form relating to Plaintiff's claim on March 30, 2005. (*Id.*) Defendant states that there were inconsistent dates in the accident report, but that it submitted the claim to Defendant's compensation carrier anyway. Defendant believes its carrier did not find any merit to the claim, nor pay a

benefit to Plaintiff. (Def.'s Mot. at 15.) Defendant then states that Plaintiff missed two additional days of work, to bring the total number of days off work to sixty-six days from March 2004 to March 2005.

On April 7, 2005, Plaintiff sustained a hand injury when she was working on a press. (Pl.'s Resp. at 19; Def.'s Mot. at 15.) Plaintiff visited the clinic the following day and called Frost to tell him that she would not be in to work. (*Id.*) Defendant claims that the April 8, 2005 visit was Plaintiff's second trip to the clinic for treatment and that Plaintiff should have returned to work after the second visit, and when she did not, gave the reason that she was tired. (Def.'s Mot. at 15.)

On April 11, 2005, Defendant transferred Plaintiff to another shop where she could work one-handed inspection jobs under a different supervisor, Tony Bodle. (Pl.'s Resp. at 19-20.) When Plaintiff arrived at work that morning she could not find a time card and went in search of a time card in Bodle's office. (Pl.'s Resp. at 20.) Defendant claims that Plaintiff was rummaging through the supervisor's desk contrary to posted notices stating that employees were not to be in a supervisor's office without the supervisor being present. (Def.'s Mot. at 16, Ex. 6.)

Then, at 10:00 a.m. on the same day, during a plant-wide break, Plaintiff had a prearranged phone call with Defendant's worker's compensation carrier regarding her March 31, 2005 claim. (Pl.'s Resp. at 20; Def.'s Mot. at 16.) When Plaintiff realized that her call could not be completed during the normal break period, she contacted Bodle and requested permission to continue the conversation, which Bodle granted. (Pl.'s Resp. at 20.) Defendant, however, contends that Plaintiff did not have permission to remain on the phone beyond her established break time. (Def.'s Mot. at 16.) When the

phone conversation ended, Plaintiff returned to her work area and then was called into Bodle's office, where Chubb and Dolan were also present. (Pl.'s Resp. at 20; Def.'s Mot. at 15.) Plaintiff attempted to explain the nature of her telephone call and that she had permission from Bodle to complete the call but Chubb terminated Plaintiff anyway. (*Id.*)

## II. STANDARD OF REVIEW – MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there

must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### III. ANALYSIS

#### A. Plaintiff's FMLA Claim

There are two theories of recovery under the FMLA: (1) the interference theory and (2) the retaliation theory. *Turner v. Sullivan Univ. Sys., Inc.*, 420 F. Supp. 2d 773, 789 (W.D. Ky. 2006). Plaintiff contends that Defendant both interfered with her rights guaranteed by the FMLA and retaliated against her for her exercise of those rights. Defendant admits that it did not know of or implement the FMLA, but asserts that Plaintiff's FMLA claims fail because (1) Plaintiff has exceeded the sixty days of leave afforded by the FMLA, and (2) even if Plaintiff were to establish a prima facie case, Defendant has articulated a legitimate reason for Plaintiff's discharge.

##### 1. Plaintiff Satisfies the Elements of an FMLA Interference Claim

The FMLA provides an interference cause of action when any employer "interfere[s] with, restrain[s] or den[ies] the exercise of or attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). In order for a plaintiff to prevail on an interference claim he must establish:

(i)  he is an "[e]ligible employee," 29 U.S.C. § 2611(2);

(ii)  the defendant is an "[e]mployer," 29 U.S.C. § 2611(4);

(iii)  the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1);

(iv)  the employee gave the employer notice of his intention to take leave, 29 U.S.C. § 2612(e)(1); and

8

(v) the employer denied the employee FMLA benefits to which he was entitled.

*Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). Under the interference or entitlement theory "[t]he issue is simply whether the employer provided its employee the entitlements set forth in the FMLA—for example, a twelve-week leave or reinstatement after taking a medical leave." *Edgar v. JAC Prods., Inc.,* 443 F.3d 501, 507 (6th Cir. 2006). The employer's intent is not a relevant part of the interference inquiry under § 2615, and the Court need not apply the *McDonnell Douglas* burden-shifting test in such cases. *Id.* at 507-08.

Defendant only disputes that Plaintiff exceeded the allotted leave provided by the FMLA and therefore was not entitled to any further leave at the time of her demotion or termination. It is undisputed that Plaintiff became an eligible employee for FMLA purposes on August 12, 2004, by virtue of working at least 1,250 hours in her first twelve months of employment with Defendant. 29 U.S.C. § 2611(2).

Specifically, Defendant contends that because Plaintiff took sixty-six days off between March 2004 and February 2005, she no longer had any remaining right to FMLA leave at the time of the challenged actions.[1] Defendant's position is without merit, however, once the applicable regulations for calculating an employee's available leave are considered. Employers are given discretion to select from one of four methodologies to calculate the accumulation of leave time:

(1) The calendar year;

---

[1] Plaintiff, on the other hand, argues that any absences prior to August 12, 2004 are irrelevant, as she was not entitled to FMLA leave at that time. As discussed below, it is not necessary to resolve this dispute over calculation methods.

(2) Any fixed 12-month "leave year," such as a fiscal year, a year required by

State law, or a year starting on an employee's "anniversary" date;

(3) The 12-month period measured forward from the date any employee's first

FMLA leave begins; or,

(4) A "rolling" 12-month period measured backward from the date an employee

uses any FMLA leave. . . .

29 C.F. R. § 825.200(b). For employers, such as Defendant, who do not select one of

these methodologies on their own, the most beneficial calculation to the employee

applies. 29 C.F.R. § 825.200(e). Here, Plaintiff's leave time taken under the four

methodologies as of the date of her termination in April 2005 are, respectively: twenty;

forty-six (from Plaintiff's anniversary date); twenty; and fifty. Thus, regardless of the

calculation method applied under 29 C.F.R. § 825.200(b), Plaintiff had not used her full

twelve weeks of leave at the time she was terminated, and Defendant's argument is

without merit.[2]

Accordingly, Plaintiff has met the elements for a valid FMLA interference claim.

## 2. Plaintiff Satisfies the Elements of an FMLA Retaliation Claim

A plaintiff who brings an FMLA retaliation claim must first state a valid prima facie

case, which requires that the individual (1) engaged in a statutorily protected activity; (2)

suffered an adverse employment action; and (3) a causal relationship existed between

the two events. *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 314 (6th Cir.

2001). Once the plaintiff has made this showing, the burden of production shifts to the

_____

[2] In addition, at the time of Plaintiff's demotion to production work in February 2005, she
had used as little as eighteen days in the 2005 calendar year, 29 C.F.R. §
825.200(b)(1), so she still had leave available at that time as well.

defendant to articulate a legitimate, non-discriminatory justification for the adverse employment action under the *McDonnell Douglas* burden-shifting analysis. If the defendant does this, the burden shifts back to the plaintiff to show that the reason asserted is mere pretext for unlawful retaliation. *Id.* at 315. "An employee can show pretext by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805-06 (6th Cir. 1998).

First, Defendant disputes the third element of a prima facie retaliatory discharge claim, that it terminated Plaintiff because she engaged in a statutorily protected activity. Defendant also contends that it has put forth a legitimate, non-discriminatory reason for terminating plaintiff, even if she has pled a valid prima facie case.

### a. Plaintiff's Protected Activity and Defendant's Adverse Employment Actions are Causally Connected

Plaintiff's demotion and first rescinded termination are directly connected to Plaintiff's medical leave and absenteeism due to medical conditions. Defendant's own documentation evidences that Defendant demoted Plaintiff due to her absences. (Pl.'s Resp., Exs. 14, 15.) Within weeks of warning Plaintiff in writing that her "continued absenteeism will result in termination of your employment,"(Pl.'s Resp., Ex. 15) Defendant terminated Plaintiff. Although temporal proximity alone is insufficient to meet the causal connection element of a prima facie case, Defendant's termination statement raises a material issue of fact whether one or both of these instances were causally connected to the protected activity of taking FMLA leave. *Skrjanc*, 272 F.3d at 317.

### b. Defendant Proffers Legitimate Reasons for its Adverse Employment Actions Against Plaintiff

Defendant contends that even if Plaintiff were to establish a prima facie claim of retaliation, its reasons for her termination were legitimate. Defendant states that Plaintiff was an "at will" employee, and such status affords both the employer and the employee the right to end the employment relationship at any time for any, not unlawful, reason. Defendant relates that the legitimate reason for terminating Plaintiff stems from her choosing not to return to work on April 8, 2005, after a physician had cleared her to work in a restricted capacity following her hand accident. Subsequent to this absence, Defendant transferred Plaintiff to a different plant, where one-handed work was available. During this first day of her transfer Defendant contends that Plaintiff was rummaging through her supervisor's desk, directly contrary to posted policy, and that Plaintiff did not return from break on time because she was on a phone call with Defendant's worker's compensation carrier. Defendant claims that these events on Plaintiff's last day of work were "[the] straw that [broke] the camel's back." (Def.'s Reply at 4.) Accordingly, Defendant has presented evidence of a legitimate justification for Plaintiff's termination, and the burden shifts back to Plaintiff to bring evidence that Defendant's justification is pretext for unlawful retaliation.

### c. Plaintiff Raises a Material Issue of Fact Whether Defendant's Asserted Justifications are Pretext

Plaintiff contends that the scenarios the Defendant presents are direct evidence of a continuation of the discriminatory conduct or "pretextual nonsense." (Pl.'s Resp. at 28.) Plaintiff puts forth evidence that it was customary for her to enter her supervisor's office throughout her employment to look for a time card. Plaintiff also states that her supervisor had given her permission to continue her phone call with the worker's

compensation carrier on the date in question. This creates a material issue of fact, as such evidence could serve to show that Defendant's legitimate reasons for termination were pretext. Thus, Plaintiff has met her burden of showing pretext and she has established the elements of an FMLA retaliation claim.

**B. Plaintiff's ADA Claims**

Plaintiff states two causes of action under the ADA. Plaintiff's first claim under the ADA is for discrimination, arising out of Defendant's failure to reasonably accommodate her disability. Plaintiff's second claim under the ADA is for retaliation, arising out of Defendant's termination of Plaintiff based on her disability and for asserting ADA rights. Defendant has argued Plaintiff is not "disabled" under the ADA and even if she is able to present a prima facie case of discrimination it has articulated a legitimate, non-discriminatory justification for her termination.

**1.   Plaintiff States a Claim for ADA Discrimination**

To establish a prima facie case of discrimination under the ADA, Plaintiff must show (1) that she is disabled within the meaning of the ADA; (2) she is otherwise qualified to perform the job's requirements, with or without reasonable accommodations; and (3) she was discharged solely by reason of her disability. *Williams v. London Util. Comm'n*, 375 F.3d 424, 428 (6th Cir. 2004). If Plaintiff can prove a prima facie case, then the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the termination. Then, the burden shifts back to Plaintiff to prove that the stated reasons are pretext. *Id.* Defendant asserts that Plaintiff's ADA discrimination claim fails because (1) she has failed to establish that Crohn's disease is a disability that limits one or more major life activities, and (2) Defendant reasonably accommodated Plaintiff.

### a. Whether Crohn's Disease is an ADA Disability is a Material Issue of Fact

Defendant contends that Plaintiff's Crohn's disease does not qualify as a disability under the ADA. In order to establish a disability, Plaintiff must prove that she (1) has a physical or mental impairment which substantially limits her in at least one major life activity, (2) has a record of such impairment, or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2). Defendant argues that Plaintiff is unable to establish that Crohn's disease substantially limits a major life activity.

The Sixth Circuit has yet to definitively hold that Crohn's is a disability within the meaning of the ADA. Still, that court has refused to rule as a matter of law that irritable bowel syndrome, a condition similar to Crohn's, is not a disability, *Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 467 (6th Cir. 1999). Rather the court has held that a reasonable jury could find that a disease that limits the ability to control one's bowel movements is a disease that substantially limits a major life activity. *Id.* That said, several other courts have held that Crohn's disease is a disability under the ADA and that eliminating waste is a major life activity.[3]

In this case, Plaintiff has presented evidence concerning her Crohn's disease, from which a reasonable jury could conclude that this condition substantially limits Plaintiff's life activities. Thus, this Court denies summary judgment on Defendant's claim

---

[3]The Eighth Circuit has held, without analysis, that one "who suffers from Crohn's is disabled within the meaning of the ADA." *Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442, 445 (8th Cir. 1998). The Eastern District of Virginia has held "[i]t is undisputed...that [the plaintiff's] Crohn's Disease constitutes a disability." *Wilder v. Southeastern Pub. Serv. Auth.*, 869 F. Supp. 409, 417 (E.D. Va. 1994). Finally, another district court from the Sixth Circuit has "assum[ed]" that eating and eliminating waste are major life activities. *Hodge v. Henry County Med. Ctr.*, 341 F. Supp. 2d 968, 973 (W.D. Tenn. 2003) (citing other district court cases).

that Plaintiff is not disabled.

### b. Whether Medical Leave and Bathroom Breaks are Reasonable Accommodations Create a Material Issue of Fact

In order to fulfill the second element of a prima facie ADA discrimination case, an employee "must establish that a 'reasonable' accommodation is possible. . . ." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). In the Sixth Circuit, the employee's initial burden to show a reasonable accommodation is not an onerous one. *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 781 (6th Cir. 1998). Furthermore, the Sixth Circuit has adopted a Second Circuit notion that an ADA plaintiff needs only to suggest a "plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Id.* (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)). If an employee establishes a plausible accommodation, the employer bears the burden of proving that the accommodation is unreasonable and imposes an "undue hardship" on the employer. *Monette*, 90 F. 3d at 1186 n.12. The ADA requires courts to consider several factors when an employer claims an undue hardship including, but not limited to, the nature and cost of the accommodation, the overall financial resources of the facility, the number of workers employed at the facility, and the type of operation of the workforce at the facility. 42 U.S.C. § 12111(10)(B).

Plaintiff maintains that Defendant denied two specific accommodations: (1) intermittent medical leaves of absence and (2) bathroom breaks. Defendant contends that the only accommodation Plaintiff ever requested from Defendant was frequent bathroom breaks, which Defendant states it provided. Defendant does not address the issue of whether the Plaintiff's requested accommodations impose an undue hardship

15

under 42 U.S.C. § 12111(10)(B), although Defendant does mention in its brief that the material handler position is a position requiring consistent attendance. (Def.'s Mot. at 2.) Defendant does not contest that Plaintiff was unable to perform the essential functions of her job without an accommodation. Rather, Plaintiff and Defendant solely disagree on what was a reasonable accommodation.

### i. Medical Leave as a Reasonable Accommodation

Plaintiff posits there is no reasonable presumption that uninterrupted attendance is an essential job requirement, thus "a medical leave of absence can constitute a reasonable accommodation under appropriate circumstances." *Cehrs*, 155 F.3d at 783. Plaintiff argues Defendant failed to accommodate a medical leave of absence when it terminated her on February 17, 2005, immediately after she returned work.  Although Defendant rescinded the termination, Plaintiff argues the subsequent demotion and reduction in salary still constitutes a failure to accommodate.  Plaintiff also claims her termination on April 11, 2005 for excessive absenteeism was a culmination of failing to accommodate.  Defendant does not address the accommodation of medical leave, and the Court concludes that this could constitute a reasonable accommodation.

### ii. Bathroom Breaks as a Reasonable Accommodation

Plaintiff testified that she requested greater access to the bathroom as an accommodation for her Crohn's disease.  Defendant states that it accommodated Plaintiff, as it only asked her to notify a supervisor or relief person to replace her in her production position so they would not have to shut down a production press when she needed to use the restroom. Defendant states that Plaintiff then could use the restroom for however long or as often as she wished.  Plaintiff disputes Defendant's assertion,

and counters that Defendant ignored her pleas for bathroom breaks and did not allow

her to the leave the press as needed. Plaintiff states that on one occasion she shut

down the press to use the restroom, and her supervisor, Frost, reprimanded her for

leaving the press. Plaintiff also claims she soiled herself and her clothing as a result of

being denied sufficient breaks. Whether Defendant supplied the requested restroom

breaks is a material issue of fact, so summary judgment is inappropriate on this factual

record.

### 2. Plaintiff States a Claim for ADA Retaliation

Plaintiff contends that Defendant retaliated against her by terminating her solely

because of her disability and because she asserted her rights under the ADA.

Defendant claims it had a legitimate reason for terminating Plaintiff.

In order for Plaintiff to establish a prima facie case for retaliation under the ADA,

Plaintiff must demonstrate: (1) she engaged in a protected activity; (2) her engagement

in that protected activity was known to her employer; (3) her employer, thereafter, took

an adverse employment action against her; and (4) a causal link exists between his

engagement in the protected activity and the adverse employment action. *Kuriatnyk v.*

*Twp. of Bazetta,* 93 F. Appx. 683, 686 (6th Cir. 2004).

Plaintiff proffers: (1) she engaged in protected activity when she requested

accommodations of her disability, by medical leaves of absence and bathroom breaks;

(2) Defendant knew of the requested accommodations; (3) Defendant took adverse

employment action against Plaintiff by demoting and terminating Plaintiff; and (4) there

is a causal link between Plaintiff's requests for accommodation and the adverse

employment actions. Defendant only disputes the fourth element of the ADA retaliatory

claim, asserting that there was no causal link between its termination of Plaintiff and her claim of a disability.

### a. Plaintiff Has Shown a Causal Link

When Plaintiff returned to work on February 17, 2005, Defendant reassigned Plaintiff to a lower paying position. Plaintiff puts forth that this lower paying position is a demotion evidenced by a decrease in salary, and thus is a materially adverse employment action taken by Defendant.  Defendant readily admits that it demoted Plaintiff because of her absences.  Plaintiff also argues that Defendant terminated her for absenteeism and other meritless reasons within weeks of warning Plaintiff that her "continued absenteeism will result in termination of your employment."  Plaintiff claims such absences were reasonable accommodations of her disability under the ADA. Given Defendant's statements and the temporal proximity between these events, evidence of the required causal link is present.

### b. Defendant Asserts Legitimate Justifications but Plaintiff Raises Evidence of Pretext

Defendant asserts the same three incidents that led to Plaintiff's discharge in justification for its actions under the ADA as it did with regards to her FMLA claim.  To reiterate, on April 8, 2005, Defendant claims Plaintiff went to the clinic for treatment of a hand injury and did not return to work because she was tired, despite being cleared to return to work.  Then, on April 11, 2005, Defendant claims Plaintiff was rummaging through a supervisor's desk, contrary to Defendant's posted policy, and did not return from break on time.  Whether Defendant's offered reasons for terminating Plaintiff are legitimate or pretext is a material issue of fact, as discussed in the previous section of

this Order addressing Plaintiff's FMLA claims. Accordingly, summary judgment on Plaintiff's ADA retaliation claim is not appropriate.

### C. Plaintiff's WDCA Claim

Plaintiff alleges unlawful retaliatory discharge under the Michigan Worker's Disability Compensation Act (the "WDCA"), Mich. Comp. Laws § 418.301(11). The WDCA prohibits retaliation against an employee who has "filed a complaint . . . under this act or because of the exercise by the employee on behalf of himself...of a right afforded by this act." *Id.* In order to establish a prima facie case of retaliatory discharge, Plaintiff must prove (1) she asserted her right to worker's compensation benefits; (2) Defendant knew that Plaintiff asserted her right to worker's compensation benefits; (3) Defendant terminated Plaintiff; and (4) there was a causal connection between Plaintiff's assertion of her right to worker's compensation benefits and her termination. *Chisolm v. Michigan AFSCME Council 25*, 218 F. Supp. 2d 855, 873 (E.D. Mich. 2002). Plaintiff bears the initial burden of establishing a causal connection between the filing of the worker's compensation claim and the adverse employment action. *Chiles v. Mach. Shop, Inc.*, 606 N.W.2d 398, 404 (Mich. Ct. App. 1999). Once Plaintiff has established a prima facie case for retaliation, the *McDonnell Douglas* burden-shifting test allows Defendant to articulate a legitimate reason for the adverse employment action. *Chilsom*, 218 F. Supp. 2d at 874. If Defendant puts forth a legitimate reason, Plaintiff must respond by showing that the legitimate reason could be pretext for discrimination. *Id.*

Defendant does not dispute the prima facie elements of Plaintiff's claim and solely offers the same legitimate reason for terminating Plaintiff with regards to her

WDCA claim as it did for Plaintiff's other claims. Specifically, Defendant contends that it terminated Plaintiff because she exceeded her break time on April 11, 2005, while she was on the telephone with the worker's compensation carrier.

The immediate firing after Plaintiff was speaking with Defendant's compensation carrier creates an issue of material fact: whether the firing was directly related to the seeking of worker's compensation benefits. Furthermore, Plaintiff has raised evidence of pretext by claiming that Bodle gave her permission to continue the call with Defendant's carrier shortly before she was terminated. Because Plaintiff has put forth evidence that raises a material issue of fact on the issue of pretext, summary judgment as to her WDCA claim is also inappropriate.

### D. Plaintiff's Michigan Persons with Disabilities Civil Rights Act Claim

Defendant does not respond to Plaintiff's First Amended Complaint, addressing an additional claim for a violation of Michigan Persons with Disabilities Civil Rights Act (the "PWDCRA"), Mich. Comp. Laws § 37.1201, *et seq.*[4] To establish a prima facie case of discrimination under the PWDCRA, Plaintiff must show (1) she is disabled as defined by the statute; (2) the disability is unrelated to Plaintiff's ability to perform the duties of a particular job; and (3) Plaintiff has been discriminated against in one of the ways set forth in the statute. *Chiles,* 606 N.W.2d at 405.

The Sixth Circuit has held the "[PWDCRA] substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim." *Cotter v. Ajilon Servs, Inc.*, 287 F.3d 593, 597 (6th Cir. 2002).

---

[4] Although Defendant's reply brief seems to allege that Plaintiff improperly amended the complaint, the fact that Defendant stipulated to an order allowing Plaintiff to amend on April 3, 2007, belies this position.

Because Plaintiff's PWDCRA claim appears, for all practical purposes, to be the same as her ADA claim, and the Court already denied summary judgment as to that claim, summary judgment as to Plaintiff's PWDCRA claim also is denied.

### E. Plaintiff's Motion to Strike

Given the disposition of Defendant's motion for summary judgment, Plaintiff's motion to strike is denied as moot.

## IV. CONCLUSION

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders that Defendant's motion for summary judgment is DENIED and Plaintiff's motion to strike is DENIED AS MOOT.

SO ORDERED.


s/Nancy G. Edmunds_____
Nancy G. Edmunds
U. S. District Judge


Dated: July 25, 2007


I hereby certify that a copy of the foregoing document was served upon counsel of record on July 25, 2007, by electronic and/or ordinary mail.

s/Carol A. Hemeyer_____
Case Manager